# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| REAL HOMES, LLC. ) | Case No.  05-02051-TLM |
| ) | |
| Debtor. ) | MEMORANDUM OF DECISION |
| ) | |
| _____ ) | |

**INTRODUCTION**

This chapter 11 case comes before the Court on the motion of Renee Baird ("Baird") seeking an order of dismissal under § 1112(b).  *See* Doc. No. 74 ("Motion").  The Motion was heard on November 21, 2005.  The Motion is supported by the U.S. Trustee and a secured creditor.

Dismissal of the case is not opposed by the debtor in possession, Real Homes, LLC ("Debtor").  In fact, Debtor has also moved for dismissal of the case. *See* Doc. No. 70.  Debtor has scheduled that motion for hearing on December 5, 2005.  *See* Doc. No. 71.  But while Debtor does not oppose dismissal, it strongly resists dismissal on the grounds alleged by Baird.

The Motion was therefore heard, and taken under advisement by the Court after the submission of evidence and argument.  This Decision constitutes the

MEMORANDUM OF DECISION - 1

Court's findings of fact and conclusions of law on the contested matter. Fed. R. Bankr. P. 7052, 9014.

**BACKGROUND AND FACTS**

On May 25, 2005, Debtor, an Idaho limited liability company, filed a voluntary chapter 7 petition. Doc. No. 1. The petition was signed by Glen Trefren ("Trefren") allegedly as an "authorized agent." *Id.* at 2. The Motion puts the legitimacy of that filing at issue. There is a significant dispute over who owns Debtor and who, as manager or member, is entitled to direct the activities and actions of Debtor. This would include the ability to file bankruptcy.

Baird was previously married to attorney Dennis Sallaz ("Sallaz"). The Court was advised at hearing that a divorce has been entered but litigation continues between Baird and Sallaz. Apparently, the interests Baird and/or Sallaz have in Debtor have become an issue in the divorce litigation as well as in this bankruptcy case.

The dispute presently before this Court can be quickly summarized. Baird contends that she is the 100% owner of Debtor, that she had to but never did authorize the bankruptcy filing, and that the case should be dismissed. Sallaz, Trefren and Debtor's counsel[1] contend that Debtor is owned 50% by Sallaz and

---

[1] Debtor's attorney, Kelly Beeman, advances Sallaz' and Trefren's view. The Court will on occasion herein refer to positions as being taken by Sallaz or by Debtor. Such positions are one and the same. Further, use of the term "Debtor" herein when referring to the position taken
(continued...)

MEMORANDUM OF DECISION - 2

50% by Trefren, that the filing was authorized by the members, and that Baird's Motion should be denied even though Debtor will itself urge dismissal in roughly two weeks.

### A.     Documents in this case

As noted, Trefren signed Debtor's petition as an "authorized agent." Doc. NO. 1 at 2. He also signed Debtor's schedules and statement of financial affairs in that same asserted capacity. *See* Doc. Nos. 5, 8. Why Trefren signed as an authorized agent, rather than as a "member" of the LLC, was never explained.

There is no disclosure, assertion or indication in the schedules or statement of financial affairs as to the ownership of Debtor. *See* Doc. Nos. 5, 8. Additionally, the form of the statement of financial affairs used here by debtor, Doc. No. 8, is not in compliance with the Official Form.[2] The filed statement concludes with question 18, while the Official Form continues with questions 19 through 25. Among these omitted questions is one requiring specification of all current and former partners, officers, directors and/or shareholders and disclosure of ownership interests. *See* Official Form 7 at questions 21, 22.[3]

---

[1](...continued)
by this attorney is not meant by the Court to reflect an adjudication of the issue in dispute, *i.e.*, who is in fact entitled to direct the Debtor in its affairs, including the filing of bankruptcy, the hiring of counsel, the positions taken by such counsel, and so on.

[2] Use of the Official Forms is mandatory. *See* Fed. R. Bankr. P. 9009.

[3] There seem to be additional issues concerning the accuracy and completeness of the
(continued...)

MEMORANDUM OF DECISION - 3

On August 22, 2005, the chapter 7 case was converted to a chapter 11 on Debtor's motion. *See* Doc. Nos. 19, 23. Under Fed. R. Bankr. P. 1007(a)(3), within 15 days of the commencement of a chapter 11 case, a debtor must file a statement of equity security holders. No such filing was timely made, nor in fact ever made, by Debtor following its conversion of this case to chapter 11. The only assertion by Debtor regarding ownership appears to be in its chapter 11 disclosure statements, which allege that Debtor is owned by Sallaz and Trefren in equal half interests. *See* Doc. No. 51 at 2-4; Doc. No. 66 at 4.

### B.     Evidence from hearing

Baird and Sallaz have unalterably opposed positions regard the creation and ownership of Debtor, and their testimony is contradictory and irreconcilable.[4]

Baird says she owns 100% of Debtor and offers in support Debtor's initial registration with the Idaho Secretary of State, Ex. 105, and a copy of an Operating Agreement for Debtor so stating. *See* Ex. 106. Additionally, Baird signed

---

[3](...continued)
schedules and statement of financial affairs. For example, the evidence indicates that Trefren signed and recorded a February 16, 2005 "quitclaim deed" on behalf of Debtor and as its member, transferring real property from Debtor to his own closely held limited liability company, Tradesman Contractors & Construction, LLC. *See* Ex. 101. This unusual and unexplained transfer would have to have been disclosed on the statement of affairs when bankruptcy was filed four months later. Additionally, Trefren filed several notices of lien against Debtor (and Sallaz and Baird) in June and July, 2005. *See* Exs. 102-104. A host of questions (violation of stay, void acts, conflicts of interest, adequacy of post-petition disclosures, etc.) are raised.

[4] They are consistent only in observing that Debtor was created by them, and was intended to provide a vehicle by which they could locate and develop real estate in Canyon County, Idaho. They further both agree that Trefren was engaged to help find such property, but they part company on whether he was a member of Debtor or a non-member employee of Debtor.

MEMORANDUM OF DECISION - 4

numerous documents related to real property transactions undertaken by Debtor. *See* Exs. 108-111. She notes that, in closing those transactions, the title company required proof of her capacity and authority to sign on behalf of Debtor, and that she provided the Operating Agreement, Ex. 106, to meet that requirement. In fact, the copy of Ex. 106 introduced into evidence was obtained by Baird from Pioneer Title.[5]

Sallaz and Debtor's counsel note that this Operating Agreement, Ex. 106, contains provisions that are inconsistent with or contradictory to the idea of 100% Baird ownership. For example, paragraph 2.1 implies the LLC may have multiple members, not one, and paragraph 2.10 indicates Sallaz was or was contemplated to be a member.[6]

Sallaz offers a different version of the Operating Agreement. *See* Ex. A. Though similar in format and, apparently, in most of its text, this version indicates that Debtor's members are Sallaz and Trefren, each of whom holds 50% of the ownership of Debtor. *Id.* at 2. This agreement is undated, though Sallaz and Trefren both testified that it was signed by them somewhere between January 11

---

[5] Baird testified that within days of filing her complaint for divorce, Ex. 113, her home was broken into and a number of her documents and records were stolen. She therefore had to obtain from third parties certain documents, including this Operating Agreement.

[6] These are not the only provisions of this sort, though they are the two on which Sallaz and Debtor's counsel focus. There are other provisions that deal with "sharing rations" among multiple members, and the like. However, as the Operating Agreement contemplated the possibility of additional members, the inclusion of such provisions is not surprising.

MEMORANDUM OF DECISION - 5

and January 19, 2005.

The "author" of the Operating Agreements was a debated question. Without objection, Baird's affidavit testimony was introduced as evidence at hearing. *See* Doc. No. 76. In it, Baird testified that Sallaz "drafted the LLC agreement and the Articles of Organization." *Id.* at 3. Baird was not effectively cross-examined regarding this assertion. Sallaz attempted to indicate Baird at least "typed" them. She denied this and stated that she acted only as a bookkeeper in Sallaz' law office and his other employees typed whatever Sallaz, as a lawyer, prepared.[7]

After the divorce litigation commenced, Sallaz signed an annual report form for Debtor showing himself as "owner-manager." *See* Ex. 115. But this 2005 annual report is markedly different from those for 2002 through 2004 which were all signed by Baird. *See* Ex. 107.[8]

Additionally, Sallaz signed a business credit application for Debtor with D.L. Evans Bank in 2005, *see* Ex. 114, indicating that he was the "100% owner" of Debtor. Sallaz testified that this unambiguous statement in the bank application

---

[7] Sallaz was an attorney and, under the weight of the evidence, the one who drafted the legal documents for Debtor's formation and operation. The Court may therefore construe ambiguities and errors in Ex. A, or inferences to be drawn from such documents filed with the Secretary of State, against Sallaz and the position advanced by him and Debtor's counsel.

[8] The 2002 and 2003 reports refer to managers, while the 2004 report refers to members. *See* Ex. 107. But, Baird filled all the reports out in the same way, showing herself as president and secretary. *Id.*

MEMORANDUM OF DECISION - 6

was simply an "error" even though he admitted executing it.

**DISCUSSION AND DISPOSITION**

The Motion asks the Court to enter an order dismissing the case under § 1112(b). The statute requires a showing of "cause" to dismiss a chapter 11 case, but the specific examples of cause listed in § 1112(b) are non-exclusive. *See* § 102(3).

Baird contends cause exists in that Debtor's filing was unauthorized, and that Trefren had no basis or authority to sign the petition or other documents. *See* Motion, Doc. No. 74; *see also* Doc. Nos. 76, 80 (affidavit and exhibits further specifying contentions and materials urged in support). The nature of the dispute facing Debtor at the November 21 hearing was clear. In addition, it appears these same contentions were being raised and litigated, in some fashion, in the state court, and there was no surprise at the nature of Baird's contentions.

### A.    Authorization to file bankruptcy

A voluntary case is commenced by the filing of a petition for relief by an entity who may be a debtor. *See* § 301. It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed. *See, e.g.*, *Hager v. Gibson*, 108 F.3d 35, 38-39 (citing *Price v. Gurney*, 324 U.S. 100, 106 (1945)); *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430-31 (Bankr. N.D. Ill. 1997); *In re*

MEMORANDUM OF DECISION - 7

*Arkco Properties, Inc.*, 207 B.R. 624, 627-28 (Bankr. E.D. Ark. 1997).

This District's decisional law is consistent. In *In re Quarter Moon Livestock Co.*, 116 B.R. 775, 90 I.B.C.R. 246 (Bankr. D. Idaho 1990), this Court considered carefully, under Idaho statutes and the debtor's organizational documents, whether the filing was properly authorized. *Id.* at 778-81. And, in *In re Council Golf & Country Club, Inc.*, 82 I.B.C.R. 207 (Bankr. D. Idaho 1982), the Court concluded that a chapter 11 filing was without corporate authority and therefore had to be dismissed. *Id.* at 207-08.

These decisions all dealt with corporations. The same principles, however, have been applied to limited liability companies. *See In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003). *Avalon* addressed, in part, the issue of whether a filing by a limited liability company was properly authorized. *Id.* at 380-81. It noted:

> LLCs are hybrid business entities, with attributes both of corporations and partnership. They provide their equity holders or "members" with the liability shield of corporations while giving them the benefit of partnership tax treatment.

*Id.* at 380. The court held that, as creatures of state law, LLCs are governed by state law and the terms of the organizational documents and operating agreements, and that the same control the question of whether the filing was authorized. *Id.*

In *Avalon*, the filing of the bankruptcy petition followed a resolution by its non-member manager, Pacific Western Management, LLC, but the resolution was

MEMORANDUM OF DECISION - 8

without member approval. The Avalon operating agreement required member approval for major decisions which, the court concluded, included filing bankruptcy. *Id.* at 380-81. Further, the decision to file a chapter 11 petition converted Avalon into a debtor in possession, which the court concluded was a change of entity structure, a decision for which Oregon statutes also required membership approval. *Id.*[9]

Like Oregon, Idaho recognizes limited liability companies. *See* Idaho Code § 53-601, *et seq.* As in *Avalon*, this Court can readily apply the principles historically applied to corporate filings to limited liability companies, and can evaluate whether an LLC filing was properly authorized and made under Idaho law and the facts of a given case.

### B.  Scenario #1 (Baird)

On January 19, 2001, Debtor was formed by the filing of the required form of articles of organization with the Secretary of State. *See* Ex. 105. The articles show Sallaz as the initial registered agent. These articles state "yes" under the paragraph inquiring if management is vested in managers.[10] The articles also

---

[9] In *Avalon*, the court ultimately found that the filing was improper and unauthorized, thus supporting dismissal, but that the filing had been "ratified" by a later consent resolution approved by in excess of 75% of the LLC's members, thus saving the case from dismissal on the basis of unauthorized commencement. *Id.* at 381. There was in the present case no argument, much less proof, of ratification.

[10] Idaho law allows a limited liability company to determine if it is to be managed by member or managers, and to address the same in the articles of organization and operating
(continued...)

require the listing of at least one initial manager (if management is vested in managers) or one initial member (if management is vested in members). Baird's name is shown there, and she signed the document. Given the disclosure as to the manner of management of Debtor, it must be concluded that she signed as a manager.

That would not appear to necessarily preclude Baird from also being a member.[11] The Operating Agreement dated January 19, 2001, Ex. 106, was signed by Baird immediately below a line indicating that those signing constitute all the members of the LLC. *Id.* at 21. This Operating Agreement also affirmatively stated she was the 100% member. *Id.* at 2.

However, inconsistent with the articles of organization she signed and filed with the Secretary of State, there is nothing in the Operating Agreement that vests management in managers. To the contrary, management was vested in members. *Id*. at 4-6.

Thus, there are some unanswered questions that exist in connection with Baird's assertions. But there are also questions, and to the Court more serious

---

[10](...continued)
agreement. *See, e.g.*, Idaho Code § 53-608(3) (articles of organization are to state if management is vested in managers or members); *see also* § 53-621 (unless operating agreement vests management in managers, it is vested in members).

[11] *See*, *e.g.*, Idaho Code § 53-622(3) (reflecting possibility of members who are or are not also managers).

MEMORANDUM OF DECISION - 10

ones, in connection with Debtor's position.

### C.     Scenario #2 (Sallaz/Trefren)

Sallaz and Trefren rely on an undated Operating Agreement, Ex. A, that they signed. They claim to have signed this agreement in early January, 2001, prior to filing the articles of organization. They did not dispute that the articles filed on January 19, 2001, Ex. 105, were the only articles ever filed at Debtor's formation.

It is confounding, however, that they would rely on this public filing. The Sallaz/Trefren version of the Operating Agreement also vests all management in the members. *See* Ex. A at 4-6. The articles of organization filed with the Secretary of State, Ex. 105, would therefore be improper and unauthorized, because (a) they incorrectly indicate management is vested in managers, not members, and (b) they are signed by Baird, someone Sallaz and Trefren say was not a member and who, under their view, would have no right whatsoever to sign anything.

Sallaz and Trefren also did not attack any of the annual reports signed by Baird for 2002 through 2004. *See* Ex. 107. If Debtor was a two-member LLC, and if its management was vested in members not managers, these public filings would be improper and tolerating them makes no sense.

In addition, Sallaz and Trefren conceded that Debtor acquired and dealt

MEMORANDUM OF DECISION - 11

with property in Canyon County in furtherance of its investment and development plans. The real estate-related documents admitted into evidence were all signed by Baird for Debtor whenever execution by debtor was required. *See* Exs. 108-111. Not only would an Operating Agreement indicating Baird's authority to sign be reasonably required by title companies and others doing business with Debtor, as discussed *supra*, the idea of Sallaz and Trefren allowing Baird to sign any of the real property documents is wholly inconsistent with and unsupported by the "members-only" Operating Agreement, Ex. A, now relied on by them.

## CONCLUSIONS

Were the Court called upon – and required – to resolve with finality the dispute existing between Baird and Sallaz/Trefren, it would be hard to do so with confidence. The Court suspects that it has heard much less, in the one afternoon of hearing on the § 112(b) issue, than the state court has heard over several days of trial. The testimony at this hearing was directly conflicting in most material regards. The documents provided at hearing do not provide an unassailable defense to ether side. And the Court strongly doubts that it either has seen all the potentially relevant documentation, or been provided a credible explanation for their absence.[12]

---

[12] The documentary gaps are sizable. For example, a limited liability company in Idaho is required to keep a multitude of business and financial records. *See* Idaho Code § 53-625. Where are they? There evidently were Debtor checking accounts. *See, e.g.*, 108, 112. What
(continued...)

MEMORANDUM OF DECISION - 12

While it may disappoint the litigants, the Court concludes that it need not reach a final resolution of the Sallaz-Baird imbroglio. An intermediate decision will suffice.

The Motion clearly presented the issue of whether Debtor was properly authorized to file and whether Trefren could execute the petition, schedules and other documents. Debtor had ample notice of what was at issue. Once Baird's exhibits and her affidavit testimony were admitted, all without objection, a *prima facie* case was made. Debtor thereafter bore the burden of proving the filing was authorized and proper.[13]

Debtor failed to present preponderating evidence that there was proper authorization to file, or that Trefren was entitled to execute the petition and

---

[12](...continued)
documents were provided bank(s) in connection with opening and authorizing transactions on such accounts?

Moreover, LLC structures provide tax benefits along with their liability shield. This LLC was formed, all agree, in 2001. Both versions of the Operating Agreement, Exs. A and 106, indicated an intent to treat Debtor as a partnership for tax purposes. *Id*. at 15. Though the Court in no sense claims a complete understanding of the accounting and tax issues, Baird's claim of 100% ownership would appear to indicate Debtor's operations would be shown on her tax returns (or the community's joint returns) through attached schedules. If Sallaz' arguments about a two member (Sallaz-Trefren) membership are true, and given the election to treat Debtor as a partnership for tax purposes, there would appear to be a need for a tax return for Debtor and for K-1 returns for both Sallaz and Trefren. Where are the several years of tax returns of Sallaz, Baird, and/or Trefren showing the treatment of ownership, income and expenses?

In short, numerous possibly corroborating (or impeaching) documents were not provided to the Court.

[13] *Accord In re The Tischer Co.*, 02.2 I.B.C.R. 102, 103 (Bankr. D. Idaho 2002); *In re Erkins*, 253 B.R. 470, 00.4 I.B.C.R. 171, 172 (Bankr. D. Idaho 2000) (once § 1112(b) movant establishes genuine issues of debtor's good faith, debtor bears burden of proving good faith filing by preponderance of the evidence).

MEMORANDUM OF DECISION - 13

documents either as a member or as an "authorized agent." Debtor never provided the books and records regarding ownership and operation of Debtor that Idaho Cod § 53-625 requires. Debtor never filed a statement of equity security holders as required by the Rules. Debtor never filed a statement of financial affairs containing and answering all the questions required by the mandatory Official Form, and missing were the questions, and responses, regarding ownership of Debtor. The limited documentation proved by Debtor at hearing was inconclusive and inconsistent with other evidence. Testimonial assertions by Sallaz and Trefren lacked detail, corroboration and, on occasion, coherence.

Debtor never provided competent, persuasive, and preponderating evidence supporting the contentions it advanced. Having failed to show the filing was authorized and proper, Debtor's case cannot stand.

The Motion will therefore be granted and the case will be dismissed.[14] The Court will enter an order accordingly.

---

[14] The U.S. Trustee has asked that the Court retain jurisdiction despite dismissal, in order to continue to address issues concerning the conduct of Beeman and the question of whether he may properly be employed. *See* Doc. No. 84. The Court declines to do so. As addressed in *Gen-Air Plumbing*, logic dictates that if there was no authority to file the petition, there was no authority to hire counsel to represent that entity in bankruptcy. 208 B.R. at 432-33. The application for approval of Debtor's employment of Beeman will therefore be denied.

MEMORANDUM OF DECISION - 14

DATED: November 25, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 15